IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00957 |
| | ) | |
| FRANKLIN CENTER FOR GOVERNMENT AND | ) | |
| PUBLIC INTEGRITY, d/b/a WATCHDOG.ORG, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO
REINSTATE, LIFT STAY AND RECONSIDER, REVISE, ALTER OR
AMEND ORDER OR, ALTERNATIVELY, FOR RULE 54(b) CERTIFICATION OR
DISMISSAL WITHOUT PREJUDICE OF THE REMAINING CLAIMS FOR RELIEF**

Plaintiff State Farm Fire and Casualty Company ("State Farm"), by counsel, for its

memorandum in support of its motion to reinstate this action on the Court's active docket, lift the

stay imposed by the Order entered April 4, 2014, and revise, reconsider, alter or amend the

Memorandum Opinion and Order entered April 4, 2014 or, alternatively, pursuant to Fed. R. Civ.

P. 54(b) direct entry of a final judgment with respect to the Court's finding and declaration in the

April 4, 2014 Order concerning the duty to defend, or dismiss without prejudice the remaining

claims or requests for relief concerning the duty to indemnify, states as follows:

**I. Overview.**

By Memorandum Opinion and Order entered April 4, 2014, the Court granted

defendant's motion for summary judgment (Doc. 22) "as to plaintiff's duty to defend under the

Businessowners Policy, Policy Number 96-BJ-A510-7, issued by plaintiff to defendant ('the

Policy')", denied State Farm's motion for summary judgment (Doc. 25), and declared that

"under the Policy, plaintiff has a duty to defend defendant against the claims asserted against it

in the action styled 3:13-cv-00094-MPM-SAA, presently pending in U.S. District Court for the

Northern District of Mississippi, Oxford Division ('the Suit')" (Doc. 38).  The Court denied

without prejudice "the parties' motions for summary judgment as to plaintiff's obligation under

the Policy to indemnify plaintiff [sic] with respect to the claims asserted against it in the Suit",

stayed this action "pending the outcome of the proceedings in the Suit", and instructed the parties

to notify the Court "within 10 days of the termination of proceedings in the Suit … as to whether

further proceedings are necessary in this action with respect to the parties' respective obligations

under the Policy concerning the Suit[.]" (Doc. 38, Order at p. 2).

 A central question presented in this declaratory judgment action concerns the exclusion in

the State Farm Businessowners Policy for personal and advertising injury "committed by an

insured whose business is: advertising, broadcasting, publishing or telecasting."  This Court

determined that the exclusion is ambiguous, and construed the language in favor of coverage and

against State Farm.  In reaching this decision, the Court did not cite or discuss the legal

authorities cited in State Farm's briefs (Docs. 26, 31) which have determined that language

similar to that contained in the State Farm policy is clear and unambiguous.  *See Am. Employers'*

*Ins. Co. v. DeLorme Publ'g Co.,* 39 F.Supp.2d 64, 80-82 (D. Me. 1999) (holding that exclusion

for advertising injury "arising out of … [a]n offense committed by an insured whose business is

advertising, broadcasting, publishing, or telecasting" is clear and unambiguous and "clearly

applies to insureds whose primary, essential, chief or principal business is publishing"); *State*

*Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.,* 343 F.3d 249, 261 (4th Cir. 2003) (citing

*DeLorme, supra,* with approval and holding that the "phrasing 'insureds whose business is ...'

clearly contemplates that the insured is more than just, in part, engaged in" advertising and that

"the logical interpretation is that the Business of Advertising exclusion 'applies to insureds

whose primary, essential, chief or principal business' is advertising"); *see also Penn Nat. Ins. Co. v. Group C Communications, Inc.*, 2011 WL 3241491, at *8 (N.J. Super. Ct. A.D. 2011) (holding that exclusion for "advertising injury" arising out of "[a]n offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting" is not ambiguous).

The undisputed facts of this case compel the conclusion that Franklin Center's primary or principal business is publishing the news vis-à-vis Watchdog.org. The policy exclusion for personal and advertising injury "committed by an insured whose business is: advertising, broadcasting, publishing or telecasting" is clear and unambiguous and applies to the business of Franklin Center. Accordingly, State Farm prays that the Court revise, reconsider, alter or amend the Memorandum Opinion and Order entered April 4, 2014, and determine that State Farm has no duty to defend.

Alternatively, in the event the Court does not grant State Farm's motion to alter or amend, State Farm seeks leave to appeal the Court's decision to the United States Court of Appeals for the Fourth Circuit. To the extent that the April 4, 2014 Order qualifies as a non-final, interlocutory "order or other decision, however designated, that adjudicates fewer than all the claims" and "does not end the action as to any of the claims" under Rule 54(b) of the Federal Rules of Civil Procedure, the Fourth Circuit has determined that it is not appealable absent Rule 54(b) certification. *Penn-America Insurance Company v. Mapp*, 521 F.3d 290 (4th Cir. 2008); *see also Essex Insurance Company v. Long Island Owners Associations, Inc.*, 379 Fed. Appx. 422, 2010 WL 2130647 (5th Cir., May 27, 2010). State Farm prays that the Court certify its decision and declaration in the April 4, 2014 Memorandum Opinion and Order concerning State Farm's duty to defend as a final judgment order under Rule 54(b) of the Federal Rules of Civil

Procedure, as "there is no just reason for delay." Fed. R. Civ. P. 54(b); *see Lott v. Scottsdale Ins. Co.*, 827 F.Supp.2d 626, 640, 640 n. 24 (E.D. Va. 2011); *Global Title, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:09-cv-550-HEH, 2011 WL 2471271, at *2-3 (E.D. Va. June 20, 2011) (unpublished), *vacated and remanded on other grounds*, 501 Fed. Appx. 255 (4th Cir. Dec. 21, 2012); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 323 F.Supp.2d 709, 722-23 (E.D. Va. 2004), *affirmed in part, reversed in part and remanded on other grounds*, 407 F.3d 631 (4th Cir. 2005). Alternatively, State Farm prays that the Court dismiss without prejudice the remaining claims for relief regarding State Farm's duty *vel non* under the Policy to indemnify, thereby allowing State Farm to seek appellate review of the Court's decision. *See Travelers Indemnity Company of Connecticut v. Sterling Wholesale, LLC,* No. 2:12-cv-156, 2013 WL 3816736, at *9 (E.D. Va., July 19, 2013); *Sentry Select Ins. Co. v. Acuna,* No. 1:11-cv-581, 2011 WL 5593159, at *7 (E.D. Va., Nov. 15, 2011).

## II. Statement of Facts.

The relevant facts are contained in the parties' Joint Stipulation (Doc. 17), and are summarized in State Farm's memoranda in support of its motion for summary judgment (Doc. 26) and in opposition to Franklin Center's cross-motion for summary judgment (Doc. 31), which are incorporated herein by reference and discussed in the Argument section of the brief *infra*.

## III. Argument.

### 1. Motion To Revise, Reconsider, Alter Or Amend Memorandum Opinion and Order.

Insofar as the April 4, 2014 Order may be deemed interlocutory, pursuant to Rule 54(b) it may be modified, revised or reconsidered at any time prior to entry of final judgment. *See American Canoe Association v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) ("an order of partial summary judgment is interlocutory in nature" (citing 11 Moore's Federal Practice

§ 56.40[3] (Matthew Bender 3d ed.)).  "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* (citation omitted).  "This is because a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."  *Id.* at 515 (noting that "[s]aid power is committed to the discretion of the district court.").[1]

The crux of this insurance coverage dispute relates to the policy exclusion for personal and advertising injury "committed by an insured whose business is: advertising, broadcasting, publishing or telecasting."  This Court determined that the language of the exclusion is ambiguous and "may not be enforced to reduce coverage otherwise provided."  *See* Doc. 37, at pp. 13-14.  State Farm respectfully submits that this ruling was erroneous and should be reconsidered.

Several courts have interpreted the same or similar exclusion and determined that the language of the exclusion is plain and unambiguous.  *See Penn Nat. Ins. Co. v. Group C Communications, Inc.*, 2011 WL 3241491, at *8 (N.J. Super. Ct. A.D. 2011) (exclusion for "advertising injury" arising out of "[a]n offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting" is not ambiguous); *Am. Employers' Ins. Co. v. DeLorme Publ'g Co.,* 39 F.Supp.2d 64, 81 (D. Me. 1999); *State Auto Prop. & Cas. Ins. Co. v.*

---

[1] A Rule 59(e) motion, by contrast, may be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown,* 478 F.3d 634, 637 (4th Cir. 2007)).  To the extent that the Order entered April 4, 2014 may be deemed final and appealable, State Farm moves the Court to alter or amend the Order to correct a clear error of law or prevent manifest injustice, for the reasons stated herein.

*Travelers Indem. Co.,* 343 F.3d 249, 261 (4th Cir. 2003).[2]

One of the seminal cases on this issue is *American Employers' Insurance Company v.*

*DeLorme Publishing Co., supra,* 39 F.Supp.2d 64 (D. Maine 1999), which involved a dispute

between Rand McNally Co., a manufacturer and distributor of maps, and DeLorme Publishing

Co., a competitor.  Rand McNally developed a product known as "Trip Maker" and DeLorme

developed a competing product known as "Trip Mate."  In response to a declaratory judgment

action filed by DeLorme, Rand McNally filed a counterclaim alleging trademark infringement.

DeLorme tendered the defense of the counterclaim to its insurers.  The applicable insurance

policy contained the following publishing exclusion:

> This insurance does not apply to:
> .   .   .   .
>
> b. "Advertising injury" arising out of:
> .   .   .   .
>
> (4) An offense committed by an insured whose business is advertising, broadcasting, publishing, or telecasting.

39 F. Supp.2d at 80.  The insurers argued that the language of the exclusion was unambiguous

and excluded coverage for companies in the publishing business, and because DeLorme was "in

---

[2] Under Virginia law, it is well settled that "[a]s with any contract, an insurance policy is to be interpreted in accordance with the plain meaning of the language contained in its provisions." *State Farm Fire and Cas. Co. v. Nationwide Mut. Ins. Co.*, 596 F.Supp.2d 940, 945 (E.D. Va. 2009). "It is the function of the court to construe the language of the contract as written, and the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer." *Id.* (quoting *Quesenberry v. Nichols,* 208 Va. 667, 672, 159 S.E.2d 636 (1968)); *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 283 Va. 624, 636, 724 S.E.2d 707, 714 (2012) ("It is a basic tenet of Virginia law that the courts, when interpreting a contract, 'construe it as written' and do 'not add terms the parties themselves did not include' and "[t]his Court 'will not insert by construction, for the benefit of a party, a term not express in the contract.'" (citations omitted)).  Because there is no ambiguity in the subject exclusion, this Court need not look beyond the plain meaning of the policy language to determine whether State Farm has a duty to defend.  *See TravCo Ins. Co. v. Ward*, 284 Va. 547, 736 S.E.2d 321, 326

the business of publishing" it was not covered for suits arising from the "advertising injuries" caused by DeLorme. *Id.* DeLorme countered "that the Court should find a distinction between an insured who is 'in the publishing business' and an insured 'whose business is publishing'", arguing that "DeLorme is covered under the policy for suits arising out of the 'advertising injuries' it causes because although DeLorme is *in* the business of publishing, publishing is not its *sole* business and thus, its business is not publishing as required by the language of the exclusion." *Id.*

The *DeLorme* Court determined that there was "no ambiguity in the pertinent language of the exclusion" and "[t]hus, the unambiguous language must be interpreted according to its plain and commonly accepted meaning." *American Employers' Insurance Company v. DeLorme Publishing Co., supra,* 39 F.Supp.2d at 81. The Court held that "[t]he phrase 'insured whose business is ... publishing' clearly applies to insureds whose primary, essential, chief or principal business is publishing." *Id.* Because DeLorme's "principal" business was publishing, the Court held that "interpreted according to its plain and generally accepted meaning, the exclusion from the coverage operates to deny coverage for DeLorme's defense costs for suits arising out of 'advertising injuries.'" *Id.*

In reaching this decision, the *DeLorme* Court "reject[ed] DeLorme's attempt to convince the Court that the language of the exclusion is ambiguous and should, as the canons of insurance contract interpretation provide, be interpreted in favor of coverage." 39 F.Supp.2d at 81. The Court determined that "the language of the exclusion makes it clear that it does not apply to insureds who are 'in the business of ... publishing' only in part." The Court explained:

---

(2012) ("This Court does not apply cannons of construction to create ambiguity where there is none …").

7

The phrasing "insureds whose business is ..." clearly contemplates that the insured is more than just, in part, engaged in one of the four listed activities. An ordinary person would not reasonably conclude that the exclusion applies if one of a company's ancillary activities is in one of the four listed areas. For example, the fictitious manufacturing company described above would not be excluded from coverage for suits arising from "advertising injuries" simply because, in addition to chiefly manufacturing goods, it advertises its goods and publishes a catalog. By not qualifying the phrase "in the business" to include even "in the business in part," the parties did not broaden the reach of the exclusion to include insureds whose ancillary activities include one of the four listed areas. Hence, in this context, to be "in the business" of one of the four listed areas plainly means to be more than merely engaged in part and clearly means to be at least primarily engaged in that activity.

*American Employers' Insurance Company v. DeLorme Publishing Co., supra,* 39 F.Supp.2d at 81-82.  The Court determined that "the language of the exclusion is reasonably and fairly susceptible to only one meaning", adding that "[a]n ordinary person would reasonably understand that the exclusion applies to insureds who are primarily, rather than solely or only partially, engaged in one of the four listed areas of business and thereby excluded from the CGL policy's coverage for suits arising from 'advertising injuries.'" *Id.* at 82.[3]

Having determined that the exclusion was clear and unambiguous, the *DeLorme* Court concluded that coverage was excluded for DeLorme because the facts established that its primary business was publishing:

Here, there is no question of fact as to whether DeLorme is engaged primarily in the publishing business. Applying the exclusion to DeLorme it is clear that coverage for defense costs in suits arising out of "advertising injuries" are excluded from the policy's coverage. DeLorme explicitly avers that it is "principally engaged in the design, printing, and sale of atlases and maps, in the development and sale of computer mapping software and databases, and recently in the design and sale of hardware that can be used in conjunction with its

---

[3] The *DeLorme* Court noted that although "[i]t is possible that a question of fact may arise under this provision as to whether the insured is, in fact, *primarily* in the business of one of the four listed areas rather than involved merely in an ancillary manner," this "however, does not render the language obscure and the factual basis for the application of the plain meaning of the language can be determined from the evidence by the fact finder." *American Employers' Insurance Company v. DeLorme Publishing Co., supra,* 39 F.Supp.2d at 82.

mapping software." Affidavit of Vice President, Contracts and Legal, of DeLorme Publishing Co., Inc. ¶ 1. DeLorme also states, through its Vice President's affidavit, that computer programs and databases are "published" while hardware is "marketed." *Id.* ¶ 5. Despite the averments contained in the affidavit submitted by DeLorme that the design, printing, and sale of atlases and maps are "published," DeLorme falls back from this position in its papers and characterizes these activities as *arguably* publishing. *See* DeLorme's Motion for Summary Judgment at 10.

The Court finds, however, that the principal activities of DeLorme (the design and printing of atlases and maps and the development of computer mapping software and databases) are publishing. The word "publishing" must be interpreted according to its plain and generally accepted meaning. ...  The word "publication" is defined as "[t]he act of publishing a book, periodical, map, piece of music, engraving, or the like." *Random House Unabridged Dictionary* 1162 (2d ed.1966). Furthermore "publishing" is defined as "the business or profession of the commercial production and issuance of literature, information, musical scores or sometimes recordings." *Webster's New Collegiate Dictionary* 952, (9th ed.1983). Accordingly, by DeLorme's own admission, it is a company "principally engaged" in the business of publishing. This description of DeLorme is further supported by the fact that the company is incorporated as DeLorme Publishing Company, Inc. The Court concludes, therefore, that an ordinary person, in reading the policies, would have understood that there was no coverage under the CGL and Umbrella policies for DeLorme's defense against the suits arising from "advertising injuries" and, thus, no coverage for the underlying trademark infringement counterclaim.

*DeLorme Publishing Co., supra,* 39 F.Supp.2d at 82-83.

The *DeLorme* Court noted that its interpretation of the exclusion was "supported by the

purpose of the exclusion", explaining as follows:

The evident purpose is to avoid the significantly greater risk of the misappropriation and infringement subsets of "advertising injury" liability incurred by insurers who are in the advertising business, and with respect to the defamation and privacy subsets of advertising injury, incurred by insureds who are in the publishing business. This purpose is served by interpreting the provision, as the Court has done here, to apply only to those businesses who are primarily or chiefly involved in one of the four listed activities.

*DeLorme Publishing Co., supra,* 39 F.Supp.2d at 83.  The Court concluded that "the language of

the 'publishing exclusion' is not ambiguous because it is not susceptible to more than one

reasonable and fair interpretation." *Id.* at 84.  Because the exclusion "exclude[s] coverage for

defense costs in suits arising out of 'advertising injuries' for insureds who are chiefly, essentially, or principally in the business of advertising, broadcasting, publishing, or telecasting" and because DeLorme was "principally engaged" in the business of publishing, the Court held that coverage for the subject trademark infringement claim that arose from an "advertising injury" was excluded under the policy. *Id.*

*DeLorme, supra,* was cited with approval by the United States Court of Appeals for the Fourth Circuit in *State Auto Property and Casualty Insurance Company v. Travelers Indemnity Company of America*, 343 F.3d 249, 261 (4th Cir. 2003). The "Business of Advertising" exclusion in that case provided that the insurance policy did not cover advertising injuries arising out of an "offense committed by an 'insured' whose business is advertising." 343 F.3d at 261. The Fourth Circuit held that "[t]he Business of Advertising Exclusion applies to those insureds, and only to those insureds, whose principal or primary business is advertising", adding that "[t]he 'phrasing "insureds whose business is ..." clearly contemplates that the insured is more than just, in part, engaged in' advertising." *Id.* (quoting *Am. Employers' Ins. Co. v. DeLorme Publishing Co.,* 39 F.Supp.2d 64, 81 (D. Me. 1999)). The Court noted that "[b]y the same token, however, we do not view the Business of Advertising Exclusion as limited to those insureds whose *sole* business is advertising." *Id.* Noting that "[m]ost, if not all, businesses are engaged in multiple areas of business even if they primarily practice in one area," the Court determined that "the logical interpretation is that the Business of Advertising exclusion 'applies to insureds whose primary, essential, chief or principal business' is advertising." *Id.* (quoting *Am. Employers' Ins. Co. v. DeLorme Publishing Co., supra*).

With these principles in mind, State Farm prays that the Court reconsider its decision. The exclusion in the State Farm policy is clear and unambiguous, and the relevant facts are

undisputed.  The test under *State Auto* and *DeLorme, supra,* is whether the insured's primary, essential, chief or principal business is advertising, broadcasting, publishing or telecasting.  In this case, the undisputed facts make it abundantly clear that when the allegedly defamatory articles were published at Watchdog.org, the primary or principal business of Franklin Center (and Ward) was publishing the news through Watchdog.org.  The undisputed facts likewise show that Franklin Center and Ward were more than just, in part, engaged in publishing the news through Watchdog.org.  Indeed, publishing the news through Watchdog.org is what culminated in the underlying litigation by GreenTech against both defendants.

As summarized in State Farm's summary judgment briefs (Docs. 26 and 31), there is no dispute that Franklin Center is a news organization primarily engaged in the business of publishing news content through its website and primary media outlet, Watchdog.org, which is available to anyone in the public who has access to the Internet.[4]  Franklin Center's President (Jason Stverak) has testified that approximately 80% of its employees (about 40 out of the 50 total employees) are reporters and editors (most of whom bring a wealth of journalism experience to the organization), and that the "lion's share" of the entity's resources are dedicated to the Watchdog.org operation. (Doc. 17, Joint Stipulation ["J.S."] Exhibit A, Stverak Dep. at 7, 43, 46-47, 55).  Mr. Stverak testified in part that "the majority of the staff are journalists, because most of our resources we put into product, for lack of a better term, i.e., doing stories and stuff like that." (J.S. Exhibit A, Stverak Dep. at 7).  And Watchdog.org is "the primary site where [the] stories are put." (*Id.* at 8).  Mr. Stverak testified that Franklin Center has a "steal-our-stuff policy" whereby "[a]nyone can take

---

[4] In a 2013 insurance application which was filed with the Court as a stipulated exhibit, Franklin Center described its business operation as "produce and distribute online news coverage of federal, state & local governments." (Doc. 17, Exhibit 28).

[a published news story] from us; once they publish it, they can go to our site and use that information or take that story." (*Id.*).  Franklin Center expects that the news articles it publishes on its website will find their way to other media outlets. (*Id.*).

Without dispute, Franklin Center's primary business is publishing the news, similar to other news media organizations like the Richmond Times-Dispatch and CNN.  What differentiates Franklin Center from those other organizations is the scope of its reporting. Mr. Stverak explained:

> We don't cover sports, we don't cover fashion, we don't cover the dining scene or style or metro.  We cover where other media don't go anymore, public service commissions, governor, state legislatures, Supreme Court; we cover state government.  And we look for, very specifically, waste, fraud, and abuse; pension abuse, abuse – any type of corruption that's going on, whether it's Republican or Democrat.  That's the primary goal from when we get up in the morning to when we get home at night.

(J.S. Exhibit A, Stverak Dep. at 7).  Franklin Center covers specific topics:

> We have very specific issues what we cover.  I don't care about sports stories, I don't care about what Paris Hilton was wearing last night at a ball.  We look at government.  We look at waste, fraud and abuse.  We look at issues that affect the taxpayers in the states across the country.  So while those you mention – like, if you're talking the Richmond newspaper, they have sports and style and all of that. We look at, you know, the biggest special interest that's around there, and that's government.  *CNN covers the gamut from international to local; we cover one specific area*.

(J.S. Exhibit A, Stverak Dep. at 55-56).

There is no question in this case that Franklin Center's business model is publishing news and commentary through Watchdog.org, which is exactly the type of media operation that increases the risk of media type injuries – in particular, the enhanced risk of "personal and advertising injury" stemming from claims of libel, slander and defamation, which are so pervasive in the media world.  Franklin Center – like the Richmond Times-Dispatch, the Washington Post, CNN, etc. – is in the business of publishing the news, and whether it is

Franklin Center (Watchhdog.org) publishing a potentially slanderous article or story or some other media business publishing a potentially slanderous article or story, each entity presents a risky enterprise for purposes of "personal and advertising injury" coverage. This is precisely the type of risk or exposure that is excluded from coverage by the plain language of the State Farm Businessowners Policy.

In the April 4 Memorandum Opinion (at p. 10), the Court has noted that the term "publishing" is not defined by the Policy. Black's Law Dictionary defines the term "publish" in pertinent part as "1. To distribute copies (of a work) to the public. 2. To communicate (defamatory words) to someone other than the person defamed." Black's Law Dictionary (9th ed. 2009); *see also Crouse v. Medical Facilities of America XLVIII*, 86 Va. Cir. 168, 2013 WL 8019583, at *9, n. 84 (Roanoke Cir. Ct. Jan. 22, 2013) (noting that definition of publish includes "to place before the public (as through a mass medium)" (citing Merriam–Webster's Third New International Dictionary 1837 (1976)); *State of Ohio vs. Hustler Magazine*, 1979 WL 208622, at *6 (Ohio App. 1 Dist. 1979) (unpublished; holding that term "publish" means "to place before the public as though in mass media", which is the term's "ordinary and natural meaning"). As a news organization which is primarily engaged in the business of publishing news articles and commentary on its website, Watchdog.org, there is no question that Franklin Center's primary business is publishing as that term as commonly understood. The language of the exclusion is plain and unambiguous and susceptible of only one reasonable interpretation – namely, that at all pertinent times Franklin Center's primary or principal business was publishing.

In sum, the principles discussed in *State Auto* and *DeLorme* above apply squarely to Franklin Center and compel the conclusion that Franklin Center's primary or principal business

was publishing the news (vis-à-vis Watchdog.org) at the time the subject news articles were published at Watchdog.org.  The exclusion for "personal and advertising injury" committed by an insured whose business is advertising, broadcasting, publishing or telecasting is clear and unambiguous, applies to Franklin Center and Kenric Ward, and excludes Business Liability coverage for the claims alleged by GreenTech in the underlying tort action.  For these reasons, State Farm prays that the Court reconsider the Memorandum Opinion and Order entered April 4, 2014, and declare that State Farm has no duty to defend.[5]

### 2.  <u>Motion For Rule 54(b) Certification</u>.

Alternatively, in the event the Court does not reconsider, revise, alter or amend the Order as requested above, and to the extent that the Court's Order entered April 4, 2014 is deemed

---

[5] In accordance with the "Eight Corners Rule" prescribed by Virginia law, State Farm also specifically notes its exceptions and objections to the following findings in the Memorandum Opinion: (i) That Count 3 of the tort complaint (Intentional Interference With Business and Prospective Business Relations) falls within the coverage for "personal and advertising injury" (Memorandum Opinion at 4); (ii) That Section II - Exclusion ¶ 17(a) does not exclude Business Liability coverage for the claims alleged in the tort complaint (Memorandum Opinion at 6-8); (iii) That Section II - Exclusion ¶ 17(b) does not exclude Business Liability coverage for the claims alleged in the tort complaint (Memorandum Opinion at 8); (iv) That Section II - Exclusion ¶ 17(n) does not exclude Business Liability coverage for the claims alleged in the tort complaint (Memorandum Opinion at 14). Based on the "Eight Corners" of the Policy and the underlying complaint, the claim of "Intentional Interference With Business And Prospective Business Relations" in Count 3 of GreenTech's complaint is not one of the specifically enumerated offenses listed in the definition of "personal and advertising injury," and Count 3 does not trigger a coverage obligation under the Policy.  Similarly, based on the "Eight Corners"' of the Policy and the underlying complaint, the claims alleged in GreenTech's complaint are excluded from coverage by the Policy's exclusions for "personal and advertising injury" (i) "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"; (ii) "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity"; (iii) "arising out of a criminal act committed by or at the direction of the insured"; and (iv) "committed by an insured whose business is: advertising, broadcasting, publishing or telecasting; …" (*see* Doc. 17, Exhibit 26, Businessowners Policy at p. 28, ¶ 17).

interlocutory,[6] State Farm moves the Court to certify its duty to defend decision under Rule 54(b) of the Federal Rules of Civil Procedure as final and appealable.

Rule 54(b) certification is appropriate in cases where, as here, the District Court determines that the insurer has a duty to defend, and the issue of whether the insurer has a duty to indemnify is premature because the underlying tort action is still pending. *See Lott v. Scottsdale Ins. Co.*, 827 F.Supp.2d 626, 640, 640 n. 24 (E.D. Va. 2011) (Ellis, J.); *see also Global Title, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:09-cv-550-HEH, 2011 WL 2471271, at *2-3 (E.D. Va. June 20, 2011) (unpublished), *vacated and remanded on other grounds*, 501 Fed. Appx. 255 (4th Cir. Dec. 21, 2012); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 323 F.Supp.2d 709, 722-23 (E.D. Va. 2004), *affirmed in part, reversed in part and remanded on other grounds*, 407 F.3d 631 (4th Cir. 2005).

*Lott v. Scottsdale Ins. Co.*, *supra*, is instructive.  In that case, the Court determined that Scottsdale had a duty to defend its insured in the Underlying Lawsuit.  The Court noted that "[t]he question of whether Scottsdale has a duty to indemnify cannot be decided on summary judgment at this time, as the duty to indemnify can only be determined after resolution of the facts alleged in the Underlying Complaint." 827 F.Supp.2d at 640 (footnote and citations omitted).  Noting that "[w]hether there is a duty to indemnify and its extent will be addressed, if

---

[6] *See Penn-America Insurance Company v. Mapp*, 521 F.3d 290 (4th Cir. 2008) (district court's opinion and order which granted summary judgment to insured with respect to insurer's duty to defend, but withheld ruling on the indemnification issue and dismissed the proceeding from active docket subject to reinstatement by any party, was not a final, appealable decision under 28 U.S.C. § 1291); *Essex Insurance Company v. Long Island Owners Associations, Inc.*, 379 Fed. Appx. 422, 2010 WL 2130647 (5th Cir., May 27, 2010) (unpublished *per curiam* holding that order which denied insurer's cross-motion for summary judgment and granted insured's cross-motion on duty to defend question, and stayed any decision on indemnity issue until state court negligence action was resolved, was not a final, appealable order under 28 U.S.C. §1291).

necessary, after the conclusion of Underlying Lawsuit," the Court determined that Rule 54(b)

certification was appropriate:

> At this time, entry of final judgment on the duty to defend issue under Rule 54(b), Fed.R.Civ.P., is appropriate. Certification under Rule 54(b) is a two-step process. First, the district court must determine whether the judgment is final. Second, the district court must determine whether there is no just reason for delay in the entry of judgment. *See Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1335 (4th Cir. 1993). While Rule 54(b) certification is recognized as the exception rather than the norm, it is proper here. *Id.* First, this is the ultimate decision on the duty to defend issue. Second, there is no just reason for delay in the entry of judgment. In fact, the consequences of delay counsel in favor of issuing final judgment at this time. An appellate ruling that Scottsdale is not obligated to defend would moot the indemnification issue, thus the interests of judicial economy are best served by Rule 54(b) certification. *See Penn–America Ins. Co. v. Mapp,* 521 F.3d 290, 296 (4th Cir. 2008) (*citing Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631 (4th Cir.2005)). Equitable considerations also favor certification under Rule 54(b) because the duty to indemnify issue may not be resolved for a considerable period of time, during which Scottsdale will be required to defend ICA/PPC, perhaps at substantial cost. *See Peace College of Raleigh, Inc. v. Am. Intern. Specialty Lines Ins. Co,* No. 5:09cv479, 2010 WL 3743539, at *11 (E.D.N.C. Sept. 16, 2010).

*Lott v. Scottsdale Ins. Co.*, 827 F.Supp.2d at 640 n. 24; *see also Global Title, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:09-cv-550-HEH, 2011 WL 2471271, at *2-3 (E.D. Va. June 20, 2011) (unpublished), *vacated and remanded on other grounds*, 501 Fed. Appx. 255 (4th Cir. Dec. 21, 2012); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 323 F.Supp.2d 709, 722-23 (E.D. Va. 2004), *affirmed in part, reversed in part and remanded on other grounds*, 407 F.3d 631 (4th Cir. 2005).

*Lott* squarely applies and demonstrates that Rule 54(b) certification is proper in this case. As in *Lott*, the Court's Memorandum Opinion and Order entered April 4, 2014 constitutes the ultimate decision on the duty to defend issue, and there is no just reason for delay in the entry of judgment.  As in *Lott*, the consequences of delay strongly weigh in favor of issuing final judgment at this time.  An appellate ruling that State Farm is not obligated to defend would moot the indemnification issue, and thus the interests of judicial economy are best served by Rule

54(b) certification.  Likewise, as in *Lott*, equitable considerations favor certification under Rule 54(b) because the duty to indemnify issue may not be resolved for a considerable period of time, during which State Farm will be required to defend Franklin Center at a substantial cost.[7]

Accordingly, State Farm prays that the Court direct entry of a final judgment on the issue of State Farm's duty to defend pursuant to Fed. R. Civ. P. 54(b).

**3.**  **Motion To Dismiss Remaining Claims For Relief Concerning Duty To Indemnify.**

Alternatively, and in the event the Court does not grant State Farm's motion to revise, reconsider, alter and amend with respect to the duty to defend, State Farm prays that the Court dismiss without prejudice the remaining claims for relief regarding State Farm's duty *vel non* under the Policy to indemnify, thereby allowing State Farm to seek appellate review of the Court's decision concerning the duty to defend.  *See Travelers Indemnity Company of Connecticut v. Sterling Wholesale, LLC,* No. 2:12-cv-156, 2013 WL 3816736, at *9 (E.D. Va., July 19, 2013) ("Notwithstanding disposition of the parties' cross-motions for summary judgment, the issue of whether the plaintiff owes a duty to indemnify the defendants remains unresolved. Because a ruling on this coverage issue relies on the outcome of the underlying litigation in New York, and that underlying litigation does not appear to be close to resolution, any remaining claims with respect to the plaintiff's duty to indemnify the defendants are hereby DISMISSED WITHOUT PREJUDICE"); *Sentry Select Ins. Co. v. Acuna,* No. 1:11-cv-581-AJT, 2011 WL 5593159, at *7 (E.D. Va., Nov. 15, 2011) ("the Court concludes that it cannot decide whether Sentry has a duty to *indemnify* Acuna for the incident at issue here until the final

---

[7] Absent Rule 54(b) certification, State Farm would be deprived of a meaningful right to appellate review of the Court's decision, since it will be required to provide a defense through the conclusion of the underlying tort action.  By the time the Court decides the duty to indemnify issue, the question of whether it has a duty to defend under the Policy would likely be moot and State Farm would have no meaningful recourse on this issue at the appellate level.

adjudication of the state court action, as an insurer's duty to defend and its duty to indemnify "are separate responsibilities and the scope of coverage is different for each." … For that reason, the Court concludes that there is no justiciable controversy before the Court, ripe for adjudication, with respect to Sentry's duty to indemnify. Sentry's request for a declaration that is has no duty to indemnify will therefore be dismissed without prejudice." (citation omitted)).[8]

## IV. Conclusion.

WHEREFORE, the premises considered, State Farm prays that this Honorable Court reinstate this action on the Court's active docket, lift the stay imposed by the Order entered April 4, 2014, and revise, reconsider, alter or amend the Memorandum Opinion and Order entered April 4, 2014 (Docs. 37 and 38) by granting State Farm's motion for summary judgment and declaring that State Farm has no duty to defend Franklin Center or Ward against the claims alleged by GreenTech in the Underlying Suit; or, alternatively and pursuant to Fed. R. Civ. P. 54(b), direct entry of a final judgment with respect to the Court's finding and declaration in the April 4, 2014 Order that "under the Policy, plaintiff has a duty to defend defendant against the claims asserted against it in the action styled 3:13-cv-00094-MPM-SAA, presently pending in U.S. District Court for the Northern District of Mississippi, Oxford Division ('the Suit')" (Doc. 38); or dismiss without prejudice the remaining claims or requests for declaratory relief as to State Farm's obligation *vel non* under the Policy to indemnify defendants Franklin Center and/or Kenric Ward for any judgment entered in the Suit, so that State Farm may seek immediate appellate review of the Court's Memorandum Opinion and Order in the U.S. Court of Appeals for the Fourth Circuit; and for such other and further relief as this Court deems proper.

---

[8] In this case, only State Farm has requested declaratory relief with respect to the duty to indemnify.  Franklin Center's Counterclaim requests declaratory relief with respect to the duty to defend only.

STATE FARM FIRE AND CASUALTY
COMPANY

By:      /s/ Alexander S. de Witt
Alexander S. de Witt, VSB 42708
Theodore I. Brenner, VSB 17815
BRENNER, EVANS & MILLMAN, P.C.
411 East Franklin Street, Suite 200
P.O. Box 470
Richmond, Virginia  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: asd@brennerevansmillman.com
           tib@brennerevansmillman.com


## CERTIFICATE OF SERVICE

I hereby certify that on this **2nd** day of May, 2014, I will electronically file the foregoing

MEMORANDUM with the Clerk of this Court using the CM/ECF system, which will then send

a notification of such filing to any filing user.

By:      /s/ Alexander S. de Witt
Alexander S. de Witt, VSB 42708
BRENNER, EVANS & MILLMAN, P.C.
411 East Franklin Street, Suite 200
P.O. Box 470
Richmond, VA  23218-0470
Phone: (804) 644-1300
Fax: (804) 644-1354
E-mail: asd@brennerevansmillman.com